IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCHUYLKILL TOWNSHIP, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITYSWITCH, LLC, *et al.*, | : | No. 08-5681 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                                          July 13, 2009

Cost of erecting a tower in Schuylkill Township?  More than $150,000.  Fair market value of that tower?  Over $700,000.  Value to Schuylkill Township of having its zoning ordinances enforced?  Priceless.  Or so it may seem.  Valuing that interest is the issue currently before this Court.

Schuylkill Township ("the Township") and CitySwitch disagree over the proposed construction of a 195-foot wireless communications tower that CitySwitch wants to erect in the Township.  The Township filed a complaint in the Chester County Court of Common Pleas against CitySwitch, LLC and Pennsylvania Lines, LLC seeking to enjoin further work on the tower.  CitySwitch removed the case to this Court.  Now before the Court is the Township's motion to remand.  For the reasons that follow, the motion is granted.

I.      BACKGROUND

Pennsylvania Lines owns approximately 2.5 acres of land located in the LI-Limited Industrial Zoning District in Schuylkill Township.[1]  (Compl. ¶¶ 9, 11.)  CitySwitch constructs and manages

---

[1] Defendants assert that the land is actually owned by Norfolk Southern.  (Answer ¶ 9.) Norfolk Southern owns a 40% share of Cityswitch.  (*Id*. ¶¶ 12-15.)

wireless communication towers for general commercial usage. (*Id*. ¶ 12.) More specifically, CitySwitch leases spaces to wireless carriers on existing or newly built railroad towers and promotes itself as a company which is able to locate towers for commercial non-railroad users in areas where private towers cannot be built. (*Id*. ¶¶ 13, 15.)

Plaintiff contends that KGI Wireless entered into a contract with CitySwitch to serve as its agent for location of non-railroad commercial users of tower space for 400 CitySwitch towers, including the tower that is the subject of this litigation. (*Id*. ¶ 17.) The Township alleges that CitySwitch "bases its business plan upon deception, coercion and a manipulation of the federal preemption granted to railroads through [federal law] which provides federal preemption and certain exemptions for railroads from local regulation." (*Id*. ¶ 19.) The Township thus believes that CitySwitch appears to work with and for established railroads but in reality circumvents local regulations for the benefit of its commercial wireless tower business. (*Id*. ¶¶ 18-19.)

In May of 2008, CitySwitch contacted the Township about a proposed installation of a 195-foot wireless communciations tower adjacent to a residential subdivision in Perkiomen Junction, which is located in Schuylkill Township. (*Id*. ¶¶ 24-26.) CitySwitch applied for a permit to erect the tower, but a letter from the Township's Code Enforcement Officer denied the application as incomplete; the letter also raised zoning and public safety issues. (*Id*. ¶¶ 25, 27-28.)

CitySwitch and Township representatives met on July 22, 2008, but the parties were unable to resolve their differences. (*Id*. ¶ 30.) Additionally, the Township claims that CitySwitch has refused to provide relevant information throughout the course of the process, including information regarding whether CitySwitch operates in the railroad industry. (*Id*. ¶¶ 30, 33, 38.) Nonetheless, CitySwitch reiterated its intention to lease unused space on both new and existing towers "to help

subsidize the cost of construction of the Railroad's communication network." (*Id*. ¶ 34.)  On or about August 27, 2008, CitySwitch filed a supplemental request for a building permit, which the Township denied.  (*Id*. ¶ 35.)  Despite the Township's contentions that the proposed tower will endanger local citizens as well as future land development in the area, CitySwitch expressed its intent to press forward with its plan to install the tower even in the absence of the necessary building permits.  (*Id*. ¶¶ 36-37, 41, 43, 45.)

On October 22, 2008, Plaintiff filed its Complaint seeking equitable relief as well as court costs, counsel fees, expenses and disbursements.  Count I is framed as a "Request for Enforcement of Zoning Ordinance Pursuant to MPC § 515.1" and seeks "an injunction or other equitable relief in the nature of an Order directing Defendants to cease and desist from installation or maintenance of a monopole of 195 feet as proposed by CitySwitch or directing removal of said tower."  In addition, the Township "requests court costs, counsel fees, expenses and disbursements to the extent provided by law or rule of Court."  Count II is titled: "Violation of Township Ordinances Concerning Building And Use And Occupancy."  It seeks relief similar to that requested in Count I.

CitySwitch removed the case to this Court on December 5, 2008.  On December 19, 2008, the Township filed a Motion to Remand.  After CitySwitch responded, the Court denied the motion without prejudice while the parties attempted to mediate their dispute.  In the meantime, despite this litigation, CitySwitch installed the tower on May 16, 2009.  (Pl.'s Mem. of Law at 1.)  Their settlement efforts failed and on May 21, 2009, Plaintiff filed a second motion to remand, asserting that this Court lacks diversity jurisdiction because the $75,000 amount in controversy is not met.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), defendants in state court may remove "any civil action . . . of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a) (2005).  Federal courts possess diversity jurisdiction over all civil actions between citizens of different states if the amount in controversy exceeds $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a)(1).  To determine whether the amount in controversy has been met, a court may consider the complaint, the notice of removal, and the submissions related to the plaintiff's motion to remand.  *Clark v. J.C. Penney Corp.*, Civ. A. No. 08-4083, 2009 WL 1564175, at *3 (D.N.J. June 1, 2009); *Hayes v. Ohio Nat'l Fin. Servs. Inc.*, Civ. A. No. 08-3743, 2008 WL 3852241, at *3 (E.D. Pa. Aug. 19, 2008).

The burden of demonstrating the existence of federal jurisdiction rests with the party asserting jurisdiction, *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), and the defendant's right to remove is determined according to the plaintiff's pleading at the time of the petition for removal.  *Angus v. Shiley*, 989 F.2d 142, 145 (3d Cir. 1993); *see also Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999) ("Even though actual damages may not be established until later in the litigation, the amount in controversy is measured as of the date of removal.").

In considering a motion to remand, "28 U.S.C. § 1441 is to be strictly construed against removal so that the Congressional intent to restrict federal diversity jurisdiction is honored."  *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) (internal citation omitted); *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("Because lack of

jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."). "This policy 'has always been rigorously enforced by the courts.'" *Samuel-Bassett*, 357 F.3d at 396 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1937)). Therefore, if the court determines that federal subject matter jurisdiction does not exist, the case must be remanded. 28 U.S.C. § 1447(c).

### III. DISCUSSION

The Township argues that this case should be remanded because the threshold jurisdictional amount is not met. Because Plaintiff has not expressly limited the amount sought in the Complaint to less than the jurisdictional minimum, this Court must apply the legal certainty test enunciated in *Red Cab*, and further developed by *Samuel-Bassett*. *See Frederico v. Home Depot*, 507 F.3d 188, 196-97 (3d Cir. 2007); *see also Dunfee v. Allstate Ins. Co.*, Civ. A. No. 08-1425, 2008 WL 2579799, at *5 (E.D. Pa. June 26, 2008). Under the legal certainty test, federal jurisdiction exists unless it appears, to a legal certainty, that the plaintiff cannot recover the jurisdictional amount. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009); *see also Frederico*, 507 F.3d at 197.

It appears to a legal certainty that Plaintiff is not entitled to recover more than $75,000 in this lawsuit. Plaintiff's Complaint does not seek any specified monetary amount. Rather, the Complaint seeks injunctive relief as well as costs and attorneys' fees. Normally, attorneys' fees are included in the jurisdictional calculation. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997). However, the amount in controversy determination often relies, in whole or in part, on state law. *See Samuel-Bassett*, 357 F.3d at 397-98. Pennsylvania law does not permit an award of attorneys' fees

absent a showing of bad faith or arbitrary or vexatious conduct. *See* 42 PA. CONS. STAT. § 2503(9) (2008). As neither side has made any such allegations of misconduct, this Court will not include attorneys' fees in the amount in controversy calculation because they are not recoverable. *See Citizens for Responsible Dev. v. Carlisle Zoning Hr'g Bd.*, 562 A.2d 938, 940 (Pa. Commw. Ct. 1989) (overturning award of attorneys' fees in zoning case based on lack of evidence of frivolous conduct).

CitySwitch suggests that the jurisdictional threshold is met because "[t]he enforcement of the Township's ordinance will cause more than $75,000 in losses for CitySwitch." (Br. in Support of Opp'n of Def. to Second Mot. for Remand [CitySwitch Br.] at 3.) Likewise, its Notice of Removal contends that the jurisdictional threshold is met because CitySwitch expended over $150,000 in connection with the proposed erection of the monopole and because the fair market value of the tower well exceeds $75,000. (Notice of Removal ¶¶ 19-22.) CitySwitch also contends that when a case involves the enforcement of a statute, the value of the case is measured by looking at the losses that will be incurred, including lost profits and the costs of compliance. (CitySwitch Br. at 3.) Cityswitch has put forth evidence that it has incurred expenses well above $75,000 and stands to lose significantly more in lost profits. (Raville Aff. ¶¶ 7-9.) Additionally, CitySwitch's recent sale of several comparable railroad towers evidences that the value of its property right is much higher than the jurisdictional threshold. (CitySwitch Br. at 4.)

The Court rejects CitySwitch's argument that the value of this case is measured by the losses that it will incur if Plaintiff's lawsuit is successful. The Township seeks an injunction enforcing local ordinances and preventing CitySwitch's tower from being erected. When a party seeks injunctive relief, the amount in controversy is determined by "the value of the object of the

litigation." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (quoting *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  That is, if a party seeks an injunction, the amount in controversy is measured by the value of the right sought to be protected by the equitable relief.  *See In re Corestates Trust Fee Litig.*, 39 F.3d 61, 65 (3d Cir. 1994).  "[T]he longstanding rule in this circuit is that, for purposes of determining the amount in controversy, the value of equitable relief must be determined from the viewpoint of the plaintiff rather than the defendant."  *Pierson v. Source Perrier, S.A.*, 848 F. Supp. 1186, 1189 (E.D. Pa. 1994); *see also Alsbrooks v. Fairbanks Capital Corp.*, Civ. A. No. 03-2386, 2003 U.S. Dist. LEXIS 9562, at *11-12 (E.D. Pa. June 10, 2003).

Because the Third Circuit dictates that the Plaintiff's viewpoint is determinative, CitySwitch's costs and lost profits are irrelevant.  *See Stewart v. Fairbanks Capital Corp.*, Civ. A. No. 03-2367, 2003 WL 21340266, at *5 (E.D. Pa. June 10, 2003).  The object of the litigation in this particular matter is the Township's right to have its zoning ordinances enforced.  That right does not depend on CitySwitch's costs of erecting a tower or the profits CitySwitch expects to lose if it cannot erect a tower.

CitySwitch, aware of the Third Circuit precedent that this Court should value the object of the litigation from the perspective of the plaintiff, offers several reasons why the amount in controversy is met nonetheless.  CitySwitch posits that even viewing the matter from Plaintiff's perspective, the motion to remand should be denied because: (1) Plaintiff's right to enforce its ordinances must be valued at some number and this right is certainly greater than $75,000; (2) Plaintiff has simply asserted, without proof, that the value falls below the jurisdictional minimum and such a "bare-bones, blanket denial" is not sufficient to defeat removal; and (3) the cost from the

7

Plaintiff's viewpoint, assuming the Township is awarded the injunctive relief sought, is the cost to CitySwitch of erecting the tower as well as the fair market value of the erected tower. (CitySwitch Br. at 4-5.)

The value of enforcement of an ordinance does not easily reduce to a dollar amount. When an action cannot be quantified as a dollar amount, "jurisdiction cannot be predicated on 28 U.S.C. § 1332." *Ad Pro, Inc. v. The Journal Register Co.*, Civ. A. No. 00-3074, 2000 WL 1053847, at *1 (E.D. Pa. Aug. 1, 2000) (citing *Stoller v. Nissan Motor Corp.*, 934 F. Supp. 423, 424 (S.D. Fla. 1996)); *see also Novastar Mortgage, Inc. v. Bennett*, 173 F. Supp. 2d 1358, 1361-62 (N.D. Ga. 2001). Plaintiff's Complaint seeks to have its ordinances enforced and contends that erecting the tower will endanger residents and private property as well as possibly interfere with the operation of a municipal sewer plant. (Compl. ¶¶ 36-37.) But these are speculative concerns are not relevant to the jurisdictional calculation; furthermore, enforcement of the ordinance does not foreclose building on the land. Something could be built on the land that complies with the local ordinances; the Township could also grant a variance. It is also possible that the tower CitySwitch erected on the land will ultimately be permitted. Thus, a fair reading of the Township's Complaint reveals that from its perspective, the object of the litigation is not the usage of the land, but rather enforcement of the local ordinances. And this Court will not turn a local zoning dispute into a federal case simply because Defendant has spent considerable sums of money.[2] The Township is not seeking money and enforcement of its ordinances does not necessarily determine the fate of the tower. The value of

---

[2] It is not clear that this matter is ripe for federal review. *See Brubaker v. E. Hempfield Twp.*, 234 F. App'x 32, 33-37 (3d Cir. 2007) (holding revocation of permit to construct 250-foot communication tower not ripe for federal review because township had not yet issued final decision with respect to enforcement of its regulations). Nonetheless, the Court's decision on the jurisdictional issue obviates the need to undertake a ripeness analysis.

enforcing the law evades easy quantification and the Court does not agree with Defendant's contention that it must top $75,000. If that were the case, every complaint filed in state court seeking an injunction under state law and involving diverse parties could find its way into federal court.

CitySwitch also argues that from Plaintiff's perspective, the value of the object of the litigation "is equal to the cost or loss that CitySwitch would incur if Plaintiff succeeds in obtaining the injunction sought against it." (CitySwitch Br. at 5.) Thus, it contends that the jurisdictional threshold is met because the sunk preparation and construction costs as well as the fair market value of the erected tower reach almost a million dollars. CitySwitch directs this Court to *In re Rezulin Products Liability Litigation*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001), to support its position that "a proper method for measuring the 'value' of a removed injunction action to the plaintiff is by reference to the cost to the defendant assuming the plaintiff prevails in obtaining the injunctive relief sought." (CitySwitch Br. at 5.) *Rezulin* is not helpful to CitySwitch. That litigation involved a number of personal injury cases related to a prescription diabetes drug. The plaintiffs primarily sought equitable relief in the form of a medical monitoring fund. But, as the *Rezulin* court noted, "a medical monitoring fund must be funded fully for each individual plaintiff to receive whatever benefits might result." 168 F. Supp. 2d at 152. Thus, the benefit to the plaintiffs was reciprocal to the defendant's funding cost because the benefits any plaintiff would receive would come from a pot created by the defendant. Furthermore, to the extent the defendant would fund research, the court could value that benefit to plaintiffs because the "'plaintiff would have either to fund such research herself or prevail in [the lawsuit].'" *Id*. at 153 (quoting *Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 365 (S.D.N.Y. 1998)). A fund set up by a defendant to benefit a group of plaintiffs is not analogous to the Township's request to enforce its zoning ordinances. Indeed, a victory for the

Township will not result in any monetary gain, merely the enforcement of its ordinances. Schuylkill Township is not litigating its property rights – it does not own the land in question.

CitySwitch's argument that its costs and lost profits are relevant from the Township's perspective tries to flip the standard in an attempt to have this Court address the matter from Defendant's viewpoint. As discussed above, the law of this Circuit requires the opposite. Since the value of this litigation from Plaintiff's perspective is immeasurable and speculative, the amount in controversy is not satisfied and remand is required. *See Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997).

**IV.     CONCLUSION**

It is legally certain that the Township is not going to be awarded more than $75,000 for its efforts since the benefit to the Township of having its local ordinances enforced is too speculative to satisfy the jurisdictional threshold. Mindful that doubts regarding removal are resolved in favor of remand, the Court grants Plaintiff's motion and remands this matter to the Chester County Court of Common Pleas. An appropriate Order will be docketed.